STATE OF NEW HAMPSHIRE

MERRIMACK, SS                                                             SUPERIOR COURT
                                                                         217-2021-CV-00132

Steven Bornstein
12 Cutts Road
Durham, NH 03824

v.

University System of New Hampshire
5 Chenell Drive, Suite 301
Concord, NH 03301

**COMPLAINT**
**Jury Trial Requested**

NOW COMES the plaintiff Steven Bornstein, by and through his attorneys Douglas, Leonard & Garvey, P.C., and respectfully submits the within Complaint, stating as follows:

**I.     Parties**

1.      The plaintiff Steven Bornstein is a former Associate Professor of Communication Sciences and Disorders for the University of New Hampshire.  The plaintiff resides at 12 Cutts Road, Durham, New Hampshire.

2.      The defendant University System of New Hampshire has a principal place of business at 5 Chenell Drive, Suite 301, Concord, New Hampshire.

**II.    Jurisdiction and Venue**

3.      The Court has subject matter jurisdiction over the plaintiff's ADEA retaliation claim pursuant to 29 U.S.C. §626 (c).  The Court likewise has subject matter jurisdiction over the plaintiff's Title VII claim.  <u>Yellow Freight Sys., Inc. v. Donnelly</u>, 494 U.S. 820, 821 (1990).  The Court has personal jurisdiction over the defendant because it is a resident of New Hampshire.

4.      Venue is proper because the defendant is a resident of Merrimack County.

### III.     Facts

5.      At all relevant times, Professor Bornstein was an Associate Professor of Communication Sciences and Disorders at the University of New Hampshire.  He was tenured in 1994.

6.      Professor Donald Robin became the Chair of Professor Bornstein's academic department, the Department of Communication Sciences and Disorders (the Department), in or around June of 2016.

7.      Almost immediately upon becoming the Department Chair, Professor Robin began repeatedly asking Professor Bornstein when he intended to retire.  In faculty meetings early in Professor Robin's time as Chair, Professor Robin would comment that the future of the Department would be bright because of his ability to mentor young faculty.

8.      Professor Robin cut the hours of Graduate Assistant help Professor Bornstein received, assigning him a Graduate Assistant for only 10 hours a week, rather than the 20 hours weekly that he had previously received.  Professor Robin demeaned the work Professor Bornstein was performing on a book, opining that writing a book did not constitute a scholarly activity and characterizing the work as "something that senior faculty do."

9.      In addition, Professor Robin stripped Professor Bornstein of significant responsibilities, reassigning them to younger professors.  Before Professor Robin became Department Chair, Professor Bornstein chaired Search Committees.  Professor Robin excluded Professor Bornstein from Search Committees, assigning a younger first-year assistant professor and younger non-tenure-track professors to Search Committees instead.

10.     Professor Robin scheduled faculty meetings when he knew Professor Bornstein had conflicts that prohibited him from attending.

11. Professor Robin prevented Professor Bornstein from voting on candidates for a tenure-track position in the Department. Professor Robin sent an e-mail on or about December 6, 2016, asking when Department members could meet to discuss the candidates. Professor Bornstein replied with his availability. Professor Robin proceeded to schedule the meeting when Professor Bornstein was unavailable, and worse yet, held a vote on the candidates without informing Professor Bornstein that a vote would occur. Professor Bornstein learned of the selection of the candidate when he received the meeting minutes on or about December 8, 2016.

12. In early December of 2016, the University's Admissions Office sought a meeting with a representative of the Department to discuss incoming students. Professor Bornstein had strong interest in attending the meeting and asked Professor Robin if he could attend on behalf of the Department. Professor Robin rejected Professor Bornstein, choosing a younger faculty member to attend the meeting instead.

13. Professor Bornstein reported concerns to Dean Michael Ferrara and Associate Dean Anne Broussard on or about December 14, 2016, that he believed Professor Robin was subjecting him to adverse treatment based on his age and his ethnicity. The basis of Professor Bornstein's concerns that Professor Robin was discriminating against him based on ethnicity was an e-mail from Professor Robin stating, "I think a re Jew paper would be well received." Professor Bornstein followed up his oral report to Dean Ferrara and Associate Dean Broussard with a December 21, 2016, e-mail broaching his concerns about age discrimination and discrimination based on ethnicity.

14. When Professor Bornstein received no response to his concerns, he corresponded with Dean Ferrara on or about January 13, 2017, noting the delay and reiterating his concerns about age and ethnicity discrimination.

15.     Dean Ferrara replied on or about January 19, 2017, falsely claiming that Professor Bornstein's January 13, 2017, communication somehow marked the first time he had learned of the concerns about age and ethnicity discrimination.

16.     On or about February 21, 2017, Professor Bornstein submitted a formal complaint alleging discrimination based on age and ethnicity discrimination to the University's Affirmative Action and Equity Office.

17.     Professor Robin promptly retaliated against Professor Bornstein after Professor Bornstein filed his complaint.  In or around March of 2017, Professor Robin sought to have disciplinary action imposed on Professor Bornstein, making a frivolous report that Professor Bornstein had somehow purposely bumped into him in a hallway.  Professor Robin's frivolous complaint against Professor Bornstein subjected Professor Bornstein to the burden of having to participate in an investigation.

18.     In or around June of 2017, the University advised Professor Bornstein, without explanation, that the University had "thoroughly investigated" his allegations of discrimination and retaliation and had determined them to be "unfounded."  Professor Bornstein asked the University to provide him a copy of the University's investigative report, but the University refused to do so.

19.     Professor Robin continued his retaliation by giving Professor Bornstein a committee assignment designed to vex him.  Before Professor Robin's arrival, Professor Bornstein had served on committees for developing graduate and undergraduate curricula, search committees to recruit faculty, and the Academic Affairs Committee.  On or about July 25, 2017, Professor Robin assigned Professor Bornstein to a committee to develop and update content for the Department website, with full knowledge that Professor Bornstein had no experience in website

maintenance or development. Professor Bornstein protested the ill-suited assignment, requesting reinstatement to the Academic Affairs Committee and further suggesting that the University could alternatively involve him in student recruitment with the Admissions Office. The defendant rebuffed Professor Bornstein, forcing him to remain on the website development committee. Professor Robin would later criticize Professor Bornstein for not formatting the website correctly—a skill Professor Bornstein had not aptitude to perform.

20. Professor Robin subjected Professor Bornstein to additional retaliation by setting unreasonable expectations for him designed to cause Professor Bornstein to fail. On or about July 25, 2017, Professor Robin advised Professor Bornstein that the University would require him to teach two (2) courses by himself in the fall, to teach three (3) courses by himself in the spring, to teach a portion of a sixth course in the fall, to teach a portion of a seventh course in the spring, and to "engage in programmatic high impact research leading to publications and the potential for extramural funding." This assignment equated to a teaching course load of 5.5 courses for the year, coupled with a requirement to "engage in programmatic high impact research."

21. "[I]t is ludicrous to impose a 5 or (heaven forbid) 6 course annual load on a faculty member and then expect [the professor] to maintain any kind of scholarly effort," Michael Carter, then President of the UNH Chapter of the American Association of University Professors wrote in an August 5, 2017, e-mail reacting to Professor Robin's expectations for Professor Bornstein for the 2017-2018 academic year. "This is the academic equivalent of debtors prison: teach constantly until you are again putting out 3 or 4 journal articles in top-tier journals each year."

22. Professor Bornstein filed a Charge of Discrimination with the New Hampshire Commission for Human Rights on or about September 18, 2017, alleging retaliation for having engaged in the protected activity of reporting discrimination based on age and ethnicity. Exhibit

5

A.  The Charge was dually filed with the United States Equal Employment Opportunity Commission (EEOC).

23. Beginning in October of 2017, the University compounded its retaliation against Professor Bornstein by subjecting him to unwarranted scrutiny for his longstanding work with the Veterans' Administration.  "It was recently brought to our attention that there is a Steven P. Bornstein who appears to be employed at the Manchester VA as a Speech Pathologist and Audiologist," Dean Ferrara wrote to Professor Bornstein in an October 12, 2017, e-mail summoning Professor Bornstein to a meeting.  Contrary to Dean Ferrara's e-mail suggesting that Professor Bornstein's work with the Veterans' Administration was somehow shocking news for the University, Professor Bornstein had worked for the Manchester, New Hampshire, Veterans' Administration Medical Center as a fee-based audiologist since the spring of 2002, with the University's knowledge.  In fact, in the UNH Faculty Annual Report for 2002-03, Professor Bornstein wrote, "This past year I have developed a consulting endeavor with the Veterans Administration providing evaluations and some rehabilitation of veterans with hearing loss due to noise exposure."

24. The University's 2017 "investigation" into the work Professor Bornstein had done for the Veterans' Administration for over fifteen (15) years was purportedly spurred by a fake website the University claimed to have found identifying Professor Bornstein as a full-time Veterans' Administration employee—a status Professor Bornstein had never held.  The University advised Professor Bornstein that it had suddenly come to believe that his "ongoing work at the Veterans' Health Administration" represented a challenge to his success at UNH.

25. Professor Bornstein ultimately presented the University an April 12, 2018, letter from the Veterans' Administration rebutting the accusation that he was somehow a Veterans'

6

Administration employee. The Veterans' Administration confirmed in the letter that Professor Bornstein was "not considered an employee," that he "receive(d) no reimbursement based on the number of hours" that he was present at the Veterans' Administration offices, that he was "paid per completed exam only," that he provided some services for which he received no compensation," and that "[t]here [were] some weeks when Dr. Bornstein [did not visit the Veterans' Administration] at all."

26. The University's unwarranted scrutiny of Professor Bornstein's Veterans' Administration work persisted despite the Veterans' Administration letter clarifying the role that he had held for over fifteen (15) years. The University continued to demand, even after receiving the letter, that Professor Bornstein produce 1099s for 2014, 2015, 2016 and 2017.

27. The University intensified its retaliation on April 13, 2018, when Professor Robin sent Professor Bornstein a letter subjecting Professor Bornstein to unwarranted disciplinary action. "[T]here are serious and long-standing deficiencies in your teaching, research and service which call into question your professional competence and commitment to your duties as a tenured faculty member," Professor Robin wrote. Professor Robin threatened to revoke permission for Professor Bornstein to consult for the Veterans' Administration in the letter, writing, "this department will not support outside work arrangements that take faculty who are not meeting their responsibilities here at UNH away from the important work of addressing performance deficiencies."

28. Professor Robin's April 13, 2018, disciplinary letter resulted in a May 25, 2018, disciplinary meeting for Professor Bornstein—which Professor Robin conspicuously failed to attend. Professor Bornstein substantially rebutted the allegations against him at the disciplinary

meeting. In Professor Bornstein's 29-year career at the University, the defendant had never previously subjected him to such discipline.

29. Professor Bornstein last taught at the University in the spring of 2018.

30. Professor Bornstein received a Notice of Right to Sue from the EEOC on December 7, 2020. Exhibit B. This lawsuit is filed within 90 days of receipt of the Notice of Right to Sue, as required.

## COUNT I

### (Retaliation in Violation of Age Discrimination in Employment Act (ADEA), 29 U.S.C. §623 (d))

31. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

32. Professor Bornstein engaged in protected conduct under the ADEA, reporting to Dean Ferrara and Associate Dean Broussard his belief that he was being subjected to adverse treatment based on his age, filing a formal complaint alleging age discrimination with the University's Affirmative Action and Equity Office, and filing a Charge of Discrimination with the New Hampshire Commission for Human Rights and the EEOC.

33. Professor Bornstein suffered multiple adverse employment actions as a direct and proximate result of his protected activities, including being subject to investigation based on Professor Robin's frivolous complaint that Professor Bornstein had bumped him, requiring Professor Bornstein to serve on a website development committee for which Professor Bornstein had no experience or aptitude rather than a committee such as a Search Committee or an Academic Affairs Committee for which Professor Bornstein had experience and qualifications, setting unreasonable expectations for Professor Bornstein to carry a 5.5 teaching course load for the 2017-2018 academic year while also engaging in "programmatic high impact research leading to

publications," subjecting him to unwarranted scrutiny relating to consulting work he had performed for the Veterans' Administration for over fifteen (15) years, threatening his ability to continue his consulting work, and subjecting him to unwarranted employment discipline.

34. As a direct and proximate result of the defendant's violations of the anti-retaliation provisions of the ADEA, Professor Bornstein has suffered and continues to suffer damages, including but not limited to lost wages, lost earning capacity, lost employment benefits, liquidated damages, and compensatory damages. Professor Bornstein is further entitled to punitive damages, plus attorney's fees, interest and costs.

## COUNT II

### (Retaliation in Violation of Title VII)

35. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

36. Professor Bornstein engaged in protected activity under Title VII, reporting to Dean Ferrara and Associate Dean Broussard his belief that he was being subjected to adverse treatment based on his ethnicity and/or religion, filing a formal complaint alleging such discrimination with the University's Affirmative Action and Equity Office, and filing a Charge of Discrimination with the New Hampshire Commission for Human Rights and the EEOC.

37. Professor Bornstein suffered multiple adverse employment actions as a direct and proximate result of his protected activities, including being subject to investigation based on Professor Robin's frivolous complaint that Professor Bornstein had bumped him, requiring Professor Bornstein to serve on a website development committee for which Professor Bornstein had no experience or aptitude rather than a committee such as a Search Committee or an Academic Affairs Committee for which Professor Bornstein had experience and qualifications, setting

unreasonable expectations for Professor Bornstein to carry a 5.5 teaching course load for the 2017-2018 academic year while also engaging in "programmatic high impact research leading to publications," subjecting him to unwarranted scrutiny relating to consulting work he had performed for the Veterans' Administration for over fifteen (15) years, threatening his ability to continue his consulting work, and subjecting him to unwarranted employment discipline.

38. As a direct and proximate result of the defendant's violations of the anti-retaliation provisions of Title VII, Professor Bornstein has suffered and continues to suffer damages, including but not limited to lost wages, lost earning capacity, lost employment benefits, and compensatory damages. Professor Bornstein is further entitled to punitive damages, plus attorney's fees, interest and costs.

REQUEST FOR RELIEF:

WHEREFORE, the plaintiff Steven Bornstein respectfully prays this Honorable Court:

A. Schedule this matter for trial by jury, and after trial;

B. Find the defendant liable for retaliation in violation of the Age Discrimination in Employment Act;

C. Find the defendant liable for retaliation in violation of Title VII;

D. Award the plaintiff damages for lost wages, lost earning capacity and lost employment benefits;

E. Award the plaintiff liquidated damages;

F. Award the plaintiff compensatory damages;

G. Award the plaintiff punitive damages;

H. Award the plaintiff his reasonable attorney's fees;

I. Award the plaintiff interest and costs; and

    J.    Grant such other and further relief as is just and equitable.

> RESPECTFULLY SUBMITTED:
> STEVEN BORNSTEIN
> By his attorneys:
> DOUGLAS, LEONARD & GARVEY, P.C.

Dated: March 5, 2021    By:    /s/ Benjamin T. King
>    Benjamin T. King, N.H. Bar. No. 12888
>    14 South Street, Unit 5
>    Concord, NH 03301
>    603-224-1988
>    benjamin@nhlawoffice.com

EEOC FORM 131-A (11/09)

# U.S. Equal Employment Opportunity Commission

| | |
|---|---|
| UNIVERSITY SYSTEM OF NH<br>5 Chenell Drive Ste 301<br>Concord, NH 03301 | **PERSON FILING CHARGE**<br><br>**Steven Bornstein**<br>THIS PERSON (check one or both)<br>[X] Claims To Be Aggrieved<br>[ ] Is Filing on Behalf of Other(s) |
| | EEOC CHARGE NO.<br>**16D-2017-00268** |
| | FEPA CHARGE NO.<br>**EA(R) 0224-17** |

**NOTICE OF CHARGE OF DISCRIMINATION** IN JURISDICTION WHERE A FEP AGENCY WILL INITIALLY PROCESS
*(See the enclosed for additional information)*

THIS IS NOTICE THAT A CHARGE OF EMPLOYMENT DISCRIMINATION UNDER

[ ] Title VII of the Civil Rights Act (Title VII)   [ ] The Equal Pay Act (EPA)   [X] The Americans with Disabilities Act (ADA)

[ ] The Age Discrimination in Employment Act (ADEA)   [ ] The Genetic Information Nondiscrimination Act (GINA)

HAS BEEN RECEIVED BY

[ ] The EEOC and sent for initial processing to _____
                                                                              *(FEP Agency)*

[X] The   **New Hampshire Commission for Human Rights**   and sent to EEOC for dual filing purposes.
                     *(FEP Agency)*

While EEOC has jurisdiction (upon expiration of any deferral requirement if this is a Title VII, ADA or GINA charge) to investigate this charge, EEOC may suspend its investigation and await the issuance of the Agency's final findings and orders. These findings and orders will be given weight by EEOC in making its own determination as to whether reasonable cause exists to believe that discrimination has occurred.

You are therefore encouraged to cooperate fully with the Agency. All facts and evidence provided by you to the Agency will be considered by EEOC when it reviews the Agency's final findings and orders. In many cases EEOC will take no further action, thereby avoiding the necessity of an investigation by both the Agency and EEOC. This likelihood is increased by your active cooperation with the Agency.

As a party to the charge, you may request that EEOC review the final findings and orders of the above-named Agency. For such a request to be honored, you must notify EEOC in writing within 15 days of your receipt of the Agency's final decision and order. If the Agency terminates its proceedings without issuing a final finding and order, you will be contacted further by EEOC. Regardless of whether the Agency or EEOC processes the charge, the Recordkeeping and Non-Retaliation provisions of the statutes as explained in the enclosed information sheet apply.

For further correspondence on this matter, please use the charge number(s) shown above.

Enclosure(s): Copy of Charge

**CIRCUMSTANCES OF ALLEGED DISCRIMINATION**

[ ] Race   [ ] Color   [ ] Sex   [ ] Religion   [ ] National Origin   [X] Age   [ ] Disability   [X] Retaliation   [ ] Genetic Information   [ ] Other

See enclosed copy of charge of discrimination.

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| October 18, 2017 | Kevin J. Berry,<br>District Director | |

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

COPY

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| [X] FEPA | EA(R) 0224-17 |
| [X] EEOC | 16D-2017-00268 |

**New Hampshire Commission for Human Rights** and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Steven Bornstein | | |

| Street Address | City, State and ZIP Code |
|---|---|
| 12 Cutts Road | Durham, NH 03824 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| University System of New Hampshire | 500+ | 603-862-1800 |

| Street Address | City, State and ZIP Code |
|---|---|
| 5 Chenell Drive, Suite 301 | Concord, NH 03301 |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Donald A. Robin, Ph.D. | | 603-862-3836 |

| Street Address | City, State and ZIP Code |
|---|---|
| Hewitt Hall, 4 Library Way | Durham, NH 03824-3563 |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

[ ] RACE   [ ] COLOR   [ ] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN
[X] RETALIATION   [ ] AGE   [ ] DISABILITY   [ ] GENETIC INFORMATION
[X] OTHER *(Specify)* **RSA 354-A**

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 12/14/16   Latest: 9/14/17
[X] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

See attached pages.

**RECEIVED**
SEP 18 2017
NH COMMISSION FOR HUMAN RIGHTS

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

9/14/17 — Date — *[signature]* Charging Party Signature

NOTARY — *When necessary for State and Local Agency Requirements*

*[signature]* Denise Ehrling

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT
*[signature]* Stvn P. Brnst

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* 9/14/17
4-22-20 comm. exp.

## Charge of Discrimination

Steven Bornstein, Ph.D. v. University of New Hampshire and Donald A. Robin, Ph.D.

1. I am an Associate Professor of Communication Sciences and Disorders at the University of New Hampshire in Durham, New Hampshire. I have been a UNH professor since 1989 and have been tenured since around 1994.

2. The respondent, Professor Donald Robin, became the Chair of the Department of Communication Sciences and Disorders in or around June of 2016. He became affiliated with our Department earlier, however, having become a consultant to the Department in or around late 2015.

3. Almost immediately, the respondent Robin began subjecting me to discriminatory treatment. He asked me multiple times when I would retire. In a March 26, 2016, e-mail, he made a disparaging reference to me being a Jew.

4. The discriminatory treatment led me to express concerns about age discrimination and ethnicity discrimination on or about December 14, 2016, to Dean Ferrara and Associate Dean Broussard.

5. Then, on or about February 21, 2017, I submitted a formal written complaint to the University's Affirmative Action and Equity Committee alleging discrimination against me perpetrated by the respondent Robin and Dean Ferrara.

6. By letter dated June 6, 2017, Provost and Vice President for Academic Affairs Nancy Targett advised me that the University had investigated my allegations of discrimination and retaliation and had determined them to be unfounded. The University refused to provide me any details regarding its alleged investigation. The University denied my requests for a copy of the University's investigation report.

7. University President Mark Huddleston affirmed the Provost's findings by letter dated June 29, 2017.

Charge of Discrimination
Steven Bornstein, Ph.D. v. University of New Hampshire and Donald A. Robin, Ph.D.

8. I have suffered, and I continue to suffer, retaliation as a result of having grieved discriminatory treatment in the workplace.

9. The respondent Robin (again the Chair of my Department and thus my direct supervisor) made a frivolous report that I had bumped him in a hallway on or about March 7, 2017, resulting in me having to participate in an investigation.

10. The respondent Robin further retaliated against me by giving me menial Committee assignments not suitable for a tenured professor. By letter dated July 25, 2017, he assigned me the task of working to develop and update content for the Department website. This is a task suited for an administrative employee, not a tenured professor. This is in particular not a task suited for me because I have no experience in website maintenance or development, as the respondent Robin knows. I have previously served on committees for developing graduate and undergraduate curricula, search committees to recruit faculty, and the Academic Affairs Committee. By giving me such a menial Committee assignment, my supervisor has retaliated against me for complaining about his discriminatory treatment of me. I specifically protested this Committee assignment, stating in an August 30, 2017, e-mail to the respondent Robin that, "Developing and updating content for a website is something that is not commensurate with my academic and professional background, and is not something in which I have interest." I requested reinstatement to the Academic Affairs Committee and involvement in some way in student recruitment with the Admissions Office." The University rebuffed my requested and insisted that I serve on the website committee to which the respondent Robin had assigned me.

11. The respondent Robin also retaliated against me by setting unreasonable expectations for me. Through the July 25, 2017, letter, he advised me that I would have to teach at least five (5) different courses during the 2017-18 academic year while "engag(ing) in

3

Case 1:21-cv-00266-LM   Document 1-2   Filed 04/01/21   Page 16 of 17

Charge of Discrimination
Steven Bornstein, Ph.D. v. University of New Hampshire and Donald A. Robin, Ph.D.

programmatic high impact research leading to publications and the potential for extramural funding." It is not realistic to expect a professor carrying at least five (5) courses in an academic year to produce significant scholarly output that academic year. By imposing unrealistic expectations on me, Professor Robin is setting me up to fail in retaliation against me for having complained about his discriminatory treatment of me.

12. Professor Robin committed more retaliation by requiring me to develop a new course in his July 25, 2017, letter. Requiring a faculty member to develop and teach a new course is a patent violation of a professor's academic freedom rights.

13. Professor Robin has further retaliated against me by scheduling faculty meetings when he knows I cannot attend them.

14. I have suffered additional retaliation in the form of unwarranted discipline and increased scrutiny, including Dean Ferrara and Professor Robin informing me that my service activities were somehow insufficient after I submitted my Complaint grieving Professor Robin's discriminatory treatment of me.

15. I file this Charge of Discrimination to seek appropriate remedies for the retaliation I have suffered and continue to suffer resulting from my reporting to the University that I was being subjected to discriminatory treatment in the workplace based on age and ethnicity.



EEOC Form 161 (11/16)   **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: **Steven Bornstein**<br>**12 Cutts Road**<br>**Durham, NH 03824** | From: **Boston Area Office**<br>**John F. Kennedy Fed Bldg**<br>**15 New Sudbury Street, Room 475**<br>**Boston, MA 02203** |

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16D-2017-00268 | Amon L. Kinsey, Jr.,<br>Supervisory Investigator | (617) 865-3672 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*[signature]*                                                              December 7, 2020

Feng K. An,                                                               *(Date Mailed)*
Area Office Director

Enclosures(s)

cc:
    **UNIVERSITY SYSTEM OF NEW HAMPSHIRE**    **Benjamin T. King, Esq.**
    **5 Chenell Drive Ste. 301**    **DOUGLAS, LEONARD & GARVEY, P.C.**
    **Concord, NH 03301**    **14 South St.t Ste. 5**
        **Concord, NH 03301**

cc: client